UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR ESQUIVEL-IPINA,<br><br>         Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Senior Warden, Otay Mesa Detention Center; et al.,<br><br>         Respondents. | Case No.: 25-CV-2672 JLS (BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

  Presently before the Court is Petitioner Victor Esquivel-Ipina's[1] Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1).  Also before the Court is Respondents Christopher LaRose's (Senior Warden, Otay Mesa Detention Center), Kristi Noem's (Secretary, U.S. Department of Homeland Security), Todd Lyons's (Acting Director, U.S. Immigration and Customs Enforcement), Patrick Drivver's (Field Officer Director, San Diego Field Office), Sirce Owen's (Acting Director of the Executive Office for Immigration Review, U.S. Department of Justice), and Pamela Bondi's (U.S. Attorney General) (collectively, "Respondents") Return to Habeas Petition ("Ret.," ECF No. 5) and

---

[1] The Court notes that Petitioner's name has been incorrectly spelled on the Docket.  The correct spelling of his surname is "Ipina," not "Lpina."  *See* Traverse at 1.

Petitioner's Traverse ("Traverse," ECF No. 6).  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Petitioner's Petition for Writ of Habeas Corpus.

## BACKGROUND

Petitioner is a citizen and national of Guatemala.  Pet. ¶ 28.  At an unknown location "around 2013," Petitioner entered the United States without being admitted, paroled, or inspected.  *Id.*  On September 6, 2025, Petitioner was stopped by U.S. Immigration and Customs Enforcement (ICE) officers and charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i)[2] and 8 U.S.C. § 1182(a)(7)(A)(i)(I).[3]  Ret. at 2.  Petitioner was then placed in removal proceedings under 8 U.S.C. § 1229(a) and issued a Notice to Appear.  *Id.*  Petitioner is currently detained at the Otay Mesa Detention Center in San Diego, California.  *Id.*  Petitioner claims that he is detained in violation of 8 U.S.C. § 1226(a) and the Due Process Clause of the Fifth Amendment.  Pet. ¶¶ 36–43.  Petitioner also raises for the first time in his Traverse the legality of his initial seizure.  Traverse at 2.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241.  *See* 28 U.S.C. § 2241(a).  The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals.  *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)).  However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—

---

[2] 8 U.S.C. § 1182(a)(6)(A)(i) designates as inadmissible, and therefore "ineligible to receive visas and ineligible to be admitted to the United States," illegal entrants who are present "without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General."

[3] 8 U.S.C. § 1182(a)(7)(A)(i)(I) designates as inadmissible entrants who are not in possession of a valid entry document.

federal habeas corpus jurisdiction remains in the district court.  *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Respondents first argue that this Court lacks jurisdiction because Petitioner lacks Article III standing.  Ret. at 3.  Respondents further argue that this Court lacks jurisdiction under 8 U.S.C. § 1225(g) and § 1225 (b)(9) and that Petitioner has failed to exhaust his administrative remedies.  *Id.* at 3–7.  Respondents then argue, if the Court finds jurisdiction and waives exhaustion, that Petitioner's claims fail on the merits because Petitioner is subject to mandatory detention under 8 U.S.C. § 1225.  *Id.* at 7–11.

**I.     Standing**

Respondents argue that because "Petitioner has not yet had [or been denied] a bond hearing," there is no controversy for the Court to resolve.  *Id.* at 3.  Article III standing requires a "case" or "controversy."  U.S. Const., Art. III, § 2; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  However, "the injury required for standing need not be actualized."  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).  Rather, "[a] party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct."  *Id.* (citing *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

The Court concludes that Petitioner has standing.  First, Petitioner has been held since September 6, 2025, without a bond hearing and without any opportunity for a hearing in the future as Respondents contend Petitioner is detained under § 1225(b), which requires mandatory detention.  Ret. at 8; *see also E.C. v. Noem*, No. 25-CV-1789-RFB-BNW, 2025 WL 2916264, at *6 (D. Nev. Oct. 14, 2025) (finding standing where respondents insisted petitioner was detained under § 1225(b) even though petitioner had not yet had or been denied a bond hearing).  Second, if Petitioner were to request a bond hearing, the Court finds that its denial would be real, immediate, and direct because immigration judges are bound by the decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) to find

1  detention classified under § 1225(b) mandatory.  *See E.C.*, 2025 WL 2916264, at *6
2  ("Because *Hurtado* divests IJs of jurisdiction to consider the release on bond of any
3  noncitizen who entered without inspection, [p]etitioner's injury of detention without the
4  due process procedures afforded under § 1226(a) is both immediate and certain to continue
5  without [c]ourt intervention.").  Therefore, Petitioner has Article III standing to challenge
6  his detention.

7  **II.  Jurisdiction**

8      Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or
9  claim by or on behalf of any alien arising from the decision or action by the Attorney
10 General to commence proceedings, adjudicate cases, or execute removal orders against any
11 alien under this chapter."  8 U.S.C. § 1252(g).  Respondents claim that "Petitioner's claims
12 necessarily arise from the decision or action by the Attorney General to commence
13 proceedings and adjudicate cases."  Ret. at 4 (simplified).  The Court disagrees.

14     Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions
15 that the Attorney General may take: her 'decision or action' to '*commence* proceedings,
16 *adjudicate* cases, or *execute* removal orders.'"  *Ibarra-Perez v. United States*, No. 24-631,
17 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-*
18 *Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)).  Section 1252(g) "does not
19 prohibit challenges to unlawful practices merely because they are in some fashion
20 connected to removal orders."  *Id.* at *7.  Section 1252(g) does not bar due process claims.
21 *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners'
22 objective was not to review the merits of their proceeding, but rather "to enforce their
23 constitutional rights to due process in the context of those proceedings").

24     Here, Petitioner does not challenge the decision to commence removal proceedings
25 or any act to adjudicate or execute a removal order.  Traverse at 4.  Rather, Petitioner is
26 challenging the legality of his initial seizure and the "agency's later misclassification of
27 custody under [§ 1225(b)], which together deprived [him of his] statutory right to a bond
28 hearing under § 1226(a)."  *Id.*  Petitioner is enforcing his "constitutional rights to due

process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, No. 25-CV-2180-DMS-MMP, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025). Therefore, § 1252(g) does not strip the Court of jurisdiction.

Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added). Respondents argue that Petitioner is challenging "the government's decision and action to detain him" during removal proceedings. Ret. at 6. Respondents assert that the decision to detain Petitioner arises from the "decision to commence removal proceedings" and thus is "an action taken . . . to remove [him] from the United States." *Id.* (quoting 8 U.S.C. § 1252(b)(9)). Respondents conclude that the Court lacks jurisdiction under § 1252(b)(9). *Id.* Again, the Court disagrees.

Section 1252(b)(9) "has built-in limits, specifically, claims that are independent of or collateral to the removal process do not fall within the scope" of § 1252(b)(9). *Gonzalez v. United States Immigration and Customs Enforcement*, 975 F.3d 788, 810 (9th Cir. 2020) (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (internal quotation marks omitted)). "[C]laims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process." *Id.*; *see also Garcia*, 2025 WL 2549431, at *3–4; *Nielson v. Preap*, 586 U.S. 392, 402 (2019) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)) (finding § 1252(b)(9) did not strip the court of jurisdiction because the petitioners were "not asking for review of an order of removal; they [were] not challenging the decision to detain them in the first place or to seek removal (as opposed to decision to deny them bond hearings); and they [were] not even challenging any part of the process by which their removability w[ould] be determined").

Here, as discussed above, Petitioner is not challenging the Department of Homeland Security's decision to commence removal proceedings, to adjudicate removability, or to

exercise its general discretion to detain. *See* Traverse at 3. Petitioner is instead challenging the "statutory and constitutional authority under which that detention was classified" and his alleged misclassification depriving him of a bond hearing. *Id.* Therefore, § 1252(b)(9) also does not strip the Court of jurisdiction.

## III.  Exhaustion

"Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). While 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by*, *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Prudential exhaustion may be required if: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citing *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

The Court, following other courts in this District, finds that exhaustion would be futile because the Board of Immigration Appeals is obligated to apply the binding precedent of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) to find that detention is mandatory under 8 U.S.C. § 1225(b)(2). *See, e.g.*, *Garcia*, 2025 WL 2549431, at *4–5; *Valdovinos v. Noem*, No. 25-CV-2439 TWR (KSC), slip op. at 9 (S.D. Cal.

Sept. 25, 2025). Therefore, the Court concludes that exhausting administrative remedies would be futile.

## IV. Merits

### A. Detention Under § 1225(b)

Respondents argue that Petitioner is subject to mandatory detention under § 1225(b)(2)(A) as an applicant for admission. Petitioner argues that he has been unlawfully subject to the mandatory detention provision under § 1225(b)(2), which "applies only to 'applicants for admission' encountered at or near the border" and not to individuals like Petitioner, who was apprehended in the interior and has been residing in the United States since 2013. Pet. ¶ 37. Petitioner alleges that he is entitled to an individualized bond hearing under § 1226(a), and that his mandatory detention based on the Board of Immigration Appeals decision, *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), contravenes "the statutory text, longstanding agency interpretation, and the limits Congress reaffirmed in the Laken Riley Act of 2025." *Id.* ¶ 38.

Section 1225 applies to "applicants for admission" who are "alien[s] present in the United States who [have] not been admitted or who arrive[] in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). Section 1225(b)(2)(A) provides in part that "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly beyond a doubt entitled to be admitted, . . . shall be detained for a proceeding under [§ 1229a]." *Id.* § 1225(b)(2)(A).

Section 1226(a) applies to a noncitizen who is "detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226 provides, so as long as the detained noncitizen is not covered by § 1226(c), that pending such decision, the Attorney General may release the noncitizen on bond. *See Jennings*, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."). Section 1226(c) requires mandatory detention for noncitizens who have been charged with certain crimes listed in

§ 1182(a) and § 1227(a). § 1226(c)(1). Notably, § 1226(c)(1)(E) (enacted by the Laken Riley Act) requires mandatory detention for noncitizens who are (1) inadmissible under §1182(a)(6)(A), (6)(C), or (7); *and* (2) charged with certain crimes.[4] § 1226(c)(1)(E). "A plain reading of this exception implies that the default discretionary bond procedures in Section 1226(a) apply to a noncitizen who . . . is present without being admitted or paroled but *has not been* implicated in any crimes as set forth in Section 1226(c)." *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *17 (W.D. Wash. Sept. 30, 2025).

Here, Petitioner is currently subject to mandatory detention at the Otay Mesa Detention Center pursuant to § 1225(b)(2). Ret. at 2. If the Court determines that Petitioner is held pursuant to § 1226 and not § 1225(b)(2), Petitioner would be entitled to a bond hearing in front of an immigration judge.

The Court follows other decisions in this Circuit finding that "seeking admission requires an affirmative act such as entering the United States or applying for status, and that it does not apply to individuals who, like [Petitioner], have been residing in the United States and did not apply for admission or a change of status." *Mosqueda v. Noem*, No. 25-CV-2304 CAS (BFM), 2025 WL 2591530, at *5 (C.D. Cal. Sept. 8, 2025); *see, e.g.*, *Vazquez v. Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *11–16 (D. Nev. Sept. 17, 2025); *Rodriguez*, 2025 WL 2782499, at *1 ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice."); *Guzman v. Andrews*, No. 25-CV-1015-KES-SKO (HC), 2025 WL 2617256, at *4–5 (E.D. Cal. Sept. 9, 2025) (finding that petitioner who was released on bond and rearrested was entitled to a bond hearing under § 1226); *Garcia*, 2025 WL 2549431, at *8 (providing

---

[4] These crimes are "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." § 1226(c)(1)(E)(ii).

petitioner with an individualized bond hearing under § 1226(a)); *Valdovinos v. Noem*, No. 25-CV-2439 TWR (KSC), slip op. at 9 (S.D. Cal. Sept. 25, 2025) (same).

Petitioner "was not encountered at a port of entry, during inspection at the border, or among individuals intercepted near the international boundary." Traverse at 10. Petitioner was arrested in the interior of the United States by ICE Officers, not while presenting himself at the gate of entry to attempt to apply for admission. *Id.* Petitioner also has not taken any affirmative acts to seek admission but rather has been residing in the United States since sometime around 2013. Pet. ¶ 37; *see also Kadir v. Larose*, No. 25-CV-1045 LL (MMP), 2025 WL 2932654, at *2–3 (S.D. Cal. Oct. 15, 2025) (finding that when petitioner scheduled an appointment for admission at the border that clearly qualified him as an applicant for admission under § 1225(b)).

Therefore, the Court concludes that Petitioner is not an applicant for admission under §1225(b) and is entitled a bond hearing under §1226(a).

### B. Legality of the Initial Stop

Petitioner raises for the first time in his Traverse that his initial stop violated 8 U.S.C. § 1357(a)(2) and the implementing regulations at 8 C.F.R. § 287.8(c). Traverse at 6–9. "A Traverse is not the proper pleading to raise additional grounds for relief." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994); *see also Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). "In order for the [government] to be properly advised of additional claims, they should be presented in an amended petition, or . . . in a statement of additional grounds." *Id.* However, the "district court 'has discretion, but is not required to' consider evidence and claims raised for the first time after the filing of the petition." *Rivera v. Broomfield*, No. 21-CV-6520-HSG, 2023 WL 4269763, at *7 (N.D. Cal. June 28, 2023) (quoting *Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002)) (finding that they could exercise discretion to address new arguments raised in the traverse). The Court declines to consider these arguments at this time.

Petitioner argues that the ICE officers who stopped him lacked any lawful basis to stop his vehicle and failed to meet the statutory prerequisites of 8 U.S.C. § 1357(a)(2), which require specific statutory findings to make a warrantless arrest—probable cause and a likelihood of escape. Traverse at 7. Petitioner cites to a settlement in the Northern District of Illinois between the government and noncitizens who were arrested without a warrant. *Id.*; *see Castanon Nava v. Dep't of Homeland Sec.*, No. 18-CV-3757, 2025 WL 2842146, at *4 (N.D. Ill. Oct. 7, 2025). This agreement included a "Broadcast Statement of Policy" that was issued to ICE officers nationwide articulating the standards for how ICE officers are to conduct warrantless arrests consistent with § 1357(a)(2). *Castanon Nava*, 2025 WL 2842146, at *4. The terms of this settlement require ICE officers, "before making a warrantless arrest," to "have probable cause that the individual is in the United States in violation of U.S. immigration law and that the individual is likely to escape before a warrant can be obtained for the arrest." *Id.* Further, "ICE officers must document the facts and circumstances surrounding a warrantless arrest in the narrative section of the foreign national's I-213 Form as soon as practicable." *Id.*

Here, Petitioner alleges that the ICE officers did not have reasonable suspicion to stop the vehicle and did not make the statutory findings of probable cause or likelihood of escape. Traverse at 7. Because this argument was raised in the Traverse, Respondents have not had a chance to respond and contest these arguments. The Court declines to consider this argument as it is unclear to what extent the "Broadcast Statement of Policy" provides Petitioner with relief. Therefore, the Petition for Writ of Habeas Corpus is **DENIED IN PART** in so far as it requests Petitioner's immediate release. If Petitioner would like to raise this argument, Petitioner can file an amended petition to allow Respondents a chance to respond.

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

Based on the foregoing, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to provide Petitioner with an individualized bond hearing under 8 U.S.C. § 1226(a) within <u>fourteen (14) days</u>. Respondents **SHALL NOT** deny Petitioner's bond on the basis that 8 U.S.C. § 1225(b)(2) requires mandatory detention. The Court **DENIES IN PART** the Petition to the extent that Petitioner requests to be released from custody.

**IT IS SO ORDERED.**

Dated: October 24, 2025

Hon. Janis L. Sammartino
United States District Judge